Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEFA FILGUEIRAS, on behalf of herself and those similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC, and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>            Defendants. | Civil Action No. 16-3037 (ES) (JSA)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

    Plaintiff Josefa Filgueiras filed this putative class action against Defendants Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "Midland") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (D.E. No. 1 ("Compl.")).  Before the Court is Ms. Filgueiras's motion for class certification (D.E. No. 83).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons set forth below, the motion for class certification is **DENIED**.

**I.    BACKGROUND**

    **A.    Factual Background**[1]

    Around 2008, Ms. Filgueiras became a cardholder at Target. (Compl. ¶ 27; D.E. No. 1-1). As a cardholder, Ms. Filgueiras could only use her account at Target retail stores or the Target

---

[1]     The factual background is based on the allegations set out in the Complaint.  While the Court summarizes the Complaint to provide factual background, it does not accept the allegations as true.

1

website. (Compl. ¶¶ 24–26). Ms. Filgueiras's Target card was not affiliated with Visa, Mastercard, American Express, or Discover, and her account could not be used to obtain cash advances or to purchase services. (*Id.* ¶¶ 27–29).

Ms. Filgueiras made payments on the Target card through August 2009. (*Id.* ¶ 30). In September 2009, however, she defaulted on the account. (*Id.* ¶ 31). Thereafter, Midland purchased Ms. Filgueiras's account among a pool of defaulted consumer debt and attempted to collect the defaulted debt on her Target card, which arose from personal, family, and household transactions. (*Id.* ¶¶ 20–23, 32–34). Specifically, Midland mailed a letter to Ms. Filgueiras on May 27, 2015, which indicated that her account had been transferred and that legal proceedings could be initiated against her in connection with her Target card. (*Id.* ¶¶ 35–36, 41–42; D.E. No. 1-2).

According to Ms. Filgueiras, Midland's collection attempt occurred after expiration of New Jersey's four-year statute of limitations for claims arising from the sale of goods. (Compl. ¶¶ 38–40). Despite this restriction, the collection letter did not disclose any relevant dates, let alone that the debt was time-barred or that settlement or payment would restart the statute of limitations. (*Id.* ¶¶ 50–52, 57–58). Instead, the collection letter was a boilerplate form that allegedly implied that the debt was legally enforceable. (*Id.* ¶¶ 37 & 54). As a result, Ms. Filgueiras believed that Midland would sue to collect the debt. (*Id.* ¶¶ 55–56).

Ms. Filgueiras alleges that Midland regularly attempted to collect time-barred debts in this manner in violation of the FDCPA. (*Id.* ¶¶ 43, 59–60). Thus, Ms. Filgueiras filed this action on behalf of herself and a putative class for alleged violations of the FDCPA. (*Id.* ¶¶ 61–81). Ms. Filgueiras seeks to recover statutory damages, actual damages, attorney's fees, and interest on behalf of herself and those similar situated. (*Id.* ¶ 82; *id.* at 12).

B.     **Procedural Background**

On May 26, 2016, Ms. Filgueiras filed this suit against Midland. (*Id.*). On January 10, 2020, Ms. Filgueiras filed the present motion for class certification. (*See* D.E. No. 83-1 ("Mov. Br.")). Midland filed an opposition on February 18, 2020 (D.E. No. 90 ("Opp.")), and Ms. Filgueiras filed a reply on March 17, 2020 (D.E. No. 93 ("Reply")). On March 19, 2020, Midland filed a letter requesting permission to file a sur-reply (D.E. No. 95 ("Sur-Reply")), and the Court granted the request on March 24, 2020, allowing the letter request to serve as the Sur-Reply. (D.E. No. 97).

C.     **Proposed Class**

In the Complaint, Ms. Filgueiras proposed both a class and a subclass. (Compl. ¶ 63). In the instant motion, however, Ms. Filgueiras proposed only the following class:

> All natural persons with addresses within the State of New Jersey, to whom, from May 26, 2015 through June 16, 2017, Midland Credit Management, Inc., sent one or more letters on behalf of Midland Funding LLC in the form attached as Exhibit B to the Complaint (letter code OS_0001), which debt arose from a Target store account that is not a Visa or MasterCard, where the debt was in default for more than four years prior to the date of the letter.

(Mov. Br. at 3). The Court will consider the revised class proposal. *See Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 401–02 (D.N.J. 2011) (citing *Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir.2004)) ("Plaintiff is not bound by the class definitions proposed in its Amended Complaint, and the Court can consider Plaintiff's revised definitions, albeit those revisions are made in its motion for class certification.").

II.    **LEGAL STANDARDS**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33

(2013) (citation omitted). Thus, a party moving for class certification "bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Comcast*, 569 U.S. at 33). In particular, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (citing Fed. R. Civ. P. 23(a)–(b)). Here, class certification is sought pursuant to Rule 23(a) and Rule 23(b)(3).

Under Rule 23(a), any party who seeks class certification must meet four requirements. First, the party must prove that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, the party must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the party must prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Fourth, the party must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). These requirements are respectively referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 590-91.

A party who seeks class certification under Rule 23(b)(3) must meet additional requirements. As a threshold condition, the party must prove "that the class is ascertainable." *Byrd*, 784 F.3d at 163. In addition, the party must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are respectively referred to as the

ascertainability, predominance, and superiority requirements.  *See, e.g.*, *Kelly v. RealPage Inc.*, 47 F.4th 202, 205 (3d Cir. 2022).

As with any suit, a class action can only be litigated by a party with standing.  *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014).  Under Article III, standing consists of three requirements:

> 1) 'the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; 2) 'there must be a causal connection between the injury and the conduct complained of'; and 3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*Twp. of Lyndhurst, N.J. v. Priceline.com Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

## III. DISCUSSION

Ms. Filgueiras and Midland dispute whether the typicality requirement of Rule 23(a)(3) and the ascertainability and predominance requirements of Rule 23(b)(3) are satisfied.  The Court considers each requirement in turn.[2]

### A. Typicality

Under Rule 23(a)(3), the movant must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  For purposes of typicality, the Court considers:

---

[2] The parties do not appear to dispute the other requirements of Rule 23(a) or Rule 23(b)(3).  Midland has raised a potential issue with the adequacy requirement by filing a notice of supplemental authority and directing the Court to *Dixon v. Jefferson Capital Systems, LLC* for the proposition that Ms. Filgueiras and class counsel are inadequate.  (D.E. No. 107).  However, as Ms. Filgueiras correctly notes, adequacy is not amenable to supplemental authority because it is not contested by Midland in opposition to the motion for class certification.  (D.E. No. 109 at 1).  In any event, the Court finds *Dixon* unpersuasive.  That case is a nonbinding out-of-circuit decision where class counsel was found inadequate based on a retainer agreement.  *See Dixon v. Jefferson Capital Sys., LLC*, No. 19-02457, 2021 WL 5908431 (S.D. Ind. Dec. 14, 2021).  In this case, no retainer agreement has been produced. (*See* D.E. Nos. 107 & 109 at 2).

> three distinct, though related concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Here, the parties dispute whether Ms. Filgueiras's claims are generally the same as those of the class. Midland argues that Ms. Filgueiras's claims are unique because she was living in Florida when she received the Target card and when she applied, opened, used, and defaulted on the account. (Opp. at 14–16). In particular, Midland argues that the Florida statute of limitations applies to Ms. Filgueiras's claims, but not necessarily to the claims of other class members. (*Id.*) In response, Ms. Filgueiras argues that New Jersey's four-year statute of limitations applies to the claims of every class member, including her own. (Reply at 10). Alternatively, Ms. Filgueiras argues that, if the Florida statute of limitations applies, her claims are not unique because the state has adopted the same four-year period as New Jersey. (*Id.* at 11).

The Court finds that the parties' dispute is more appropriately discussed as part of the predominance analysis. Although Midland contends that Ms. Filgueiras is "atypical from the other class members," it points to "a strong likelihood that other proposed class members will require the same choice-of-law analysis" and "individualized inquiry" as Ms. Filgueiras. (Opp. at 16). Likewise, Ms. Filgueiras frames the relevant question as whether "individual inquiry is needed" for class members. (Reply at 11). Clearly, the parties' dispute is not whether Ms. Filgueiras faces an inquiry from which the rest of the class is immune, but whether individual questions predominate over common questions with respect to the class as a whole, including Ms. Filgueiras.

Such individualized issues will be treated as a challenge to predominance. (See *infra* at 9–13).³

### B. Ascertainability

Under Rule 23(b)(3), the movant must show "that the class is ascertainable." *Byrd*, 784 F.3d at 163. For purposes of ascertainability, "the class must be defined with reference to objective criteria," and "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

Here, Midland argues that the class is not ascertainable because "it would take fact-intensive and individualized inquiries to determine whether the debt is actually time-barred" and "Ms. Filgueiras has failed to present any evidence that she has developed a methodology for ascertaining the identities of class members." (Opp. at 17–19). In response, Ms. Filgueiras argues that "[Midland's] own records have identified class members" and that "it is not fatal for a class definition to require some inquiry into individual records." (Reply at 11).

The Court again finds that the parties' dispute is more appropriately discussed as part of the predominance analysis. Although fact-intensive and individualized inquiries may be necessary to determine whether debts are time-barred, that problem is not a challenge to ascertainability. For ascertainability, the relevant concern is the class definition, which does not reference time-barred

---

³ Individualized issues aside, the typicality requirement is likely satisfied. The allegations suggest that Ms. Filgueiras and the class were subject to the same unlawful collection practice, and the evidence shows that class members likely received the same letter as Ms. Filgueiras. (*See* D.E. No. 83-2, Kim Decl. ¶¶ 31, 34, 36; D.E. No. 83-4, Carson Tr. 187:4–6; D.E. No. 83-6, Canez Tr. 39:21–25). As such, both the legal theory advanced and the factual circumstances underlying that theory are generally the same for Ms. Filgueiras and the class. Nor is there evidence that Ms. Filgueiras is subject to a unique defense that is inapplicable to many members of the class or likely to become a major focus of the litigation. Rather, there is evidence that Ms. Filgueiras's interests and incentives are sufficiently aligned with those of the class. For example, Ms. Filgueiras has attested to her responsibilities and devotion to the class, her involvement and participation in this case, her willingness to testify and provide documents, and her record of doing so. (D.E. No. 83-8, Filgueiras Decl. ¶¶ 7–8, 11–12; *see also* D.E. No. 83-2, Kim Decl. ¶¶ 25, 27). So too, Ms. Filgueiras has attested that she has "not been promised or guaranteed money," that she is "not employed by or related to any of [her] attorneys," and that she is "unaware of any reason why [her] interests in pursuing this case would be adverse or antagonistic to class members' interests." (D.E. No. 83-8, Filgueiras Decl. ¶¶ 9–10, 13; *see also* D.E. No. 83-2, Kim Decl. ¶ 29).

debts. Indeed, the class definition references a seemingly objective criterion—"the debt was in default for more than four years prior to the date of the letter." (Mov. Br. at 3). To the extent that individual issues predominate over the determination of whether class members' debts are time-barred, that predicament will be treated as a challenge to predominance. (*See infra* at 9–13).[4]

### C. Predominance

Under Rule 23(b)(3), the movant must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009) (citations omitted). Rule 23(b)(3) states that

> [t]he matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[4] Individualized issues aside, the ascertainability requirement is likely satisfied. The evidence suggests that evaluation of membership in the putative class is administratively feasible, as Midland already identified 54 potential class members during discovery (*see* D.E. No. 38-3 ¶ 6). While Ms. Filgueiras altered the class definition in the present motion, members of the putative class likely remain identifiable. The altered class definition requires that Midland sent the letters by June 2017, that the letters took the form of the communication received by Ms. Filgueiras, that the accounts were unaffiliated with Visa or Mastercard, and that the debts were defaulted more than four years prior. The 54 potential class members were identified during discovery dated to June 2017 (*id.*), and the evidence shows that the 54 members received the same letter (*see* D.E. No. 83-2, Kim Decl. ¶¶ 31, 34, 36; D.E. No. 83-4, Carson Tr. 187:4–6; D.E. No. 83-6, Canez Tr. 39:21–25), that no individual was a Visa or MasterCard holder (*see* D.E. No. 83-2, Kim Decl. ¶ 38; D.E. No. 83-4, Carson Tr. 183:15–18), and that Midland assumed a four-year period when it identified the potential class (*see* D.E. No. 83-6, Canez Tr. 39:12–20).

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The Third Circuit has held that "the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011). Additionally, debt collection "letters, when read in their entirety, must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay the time-barred debt." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018). To evaluate whether a debt collection has threatened legal action or misrepresented a legal obligation with respect to a time-barred debt, the Court must determine whether the debt in question is time-barred. Ultimately, individual issues predominate over this determination, as well as determinations of standing.

### i. Choice of Law

Midland argues that individual issues predominate over the determination of whether class members' debts are time-barred because the applicable statutes of limitations and the possibility of tolling depend upon individual circumstances. (Opp. at 21–24). In response, Ms. Filgueiras argues that the applicable statutes of limitations impose the same time restrictions upon every class member and that the possibility of tolling is speculative. (Reply at 9 n.13, 10–11).[5]

The Court finds that individual issues predominate with respect to choice of law, including

---

[5] Midland argues that proof of damages also requires individual treatment because Ms. Filgueiras seeks actual damages and has suffered emotional distress but offers no class-wide damages models. (Opp. at 23–25). In response, Ms. Filgueiras argues that the class claims do not encompass actual damages or emotional distress, and that individual treatment regarding damages calculations does not necessarily defeat class certification. (Reply at 12). The Court need not address these arguments at class certification because the Third Circuit has held that class-wide damages models are only required in the antitrust context. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374 (3d Cir. 2015).

the statute of limitations. As an initial matter, Ms. Filgueiras provides no evidence that each potential class member would have sued Midland in the same forum, so it is unclear that the same choice-of-law rules would have governed across the class. *See, e.g.*, *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., L.L.C.*, 160 A.3d 44, 64 (N.J. Super. Ct. App. Div. 2017) ("When New Jersey is the forum state, its choice-of-law rules control."). But even if New Jersey choice-of-law rules would have governed in each case, it is still unclear that the same statute of limitations would have applied to all of the putative class members.

New Jersey courts uphold contractual choices of substantive law, with two exceptions: if "the chosen state has no substantial relationship to the parties or the transaction" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) (citations omitted); *see also Midland Funding LLC v. Jimenez*, No. PAS-5600-14, 2014 N.J. Super. Unpub. LEXIS 3114, at *7–8 (N.J. Super. Ct. Nov. 19, 2014). "It is well-settled in New Jersey that the statute of limitations is a matter of substantive law, not procedural law." *Midland*, 2014 N.J. Super. Unpub. LEXIS 3114, at *8. Absent a contractual choice of law, "New Jersey, as the forum state, presumptively applies its own statute of limitations." *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 223–24 (N.J. 2017) (citing Restatement (Second) of Conflict of Laws § 142 (1971)).[6]

---

[6] In *McCarrell*, the court recognized § 142 of the Second Restatement as "the operative choice-of-law rule for resolving statute-of-limitations conflicts" to yield "more predictable and uniform results that are consistent with the just expectations of the parties." *McCarrell*, 153 A.3d at 210. "While the court in *McCarrell* applied § 142 in tort actions, the Appellate Division has expanded the application of § 142 to contractual disputes as well." *Yerkes v. Weiss*, No. 17-2493, 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018) (citing *Berkley Risk Sols., LLC v. Indus. Re-Int'l, Inc.*, No. L-2366-15T1, 2017 WL 4159170, at *7 (N.J. Super. Ct. App. Div. Sept. 20, 2017)); *see also Pazymino v. Portfolio Recovery Associates, LLC*, No. 19-12259, 2022 WL 17668024, at *5 (D.N.J. Dec. 14, 2022). As such, courts in this district have adopted the holding of *McCarrell* and applied the New Jersey statute of limitations to claims arising from the sale of goods. *See, e.g.*, *Martinez v. Ethicon, Inc.*, No. 18-17570, 2019 WL 4345867, at *2 (D.N.J. Sept. 12, 2019); *Gonzales v. Ethicon Corp., Inc.*, No. 18-17658, 2019 WL 4306352, at *3 (D.N.J. Sept. 11, 2019).

Here, Ms. Filgueiras's cardholder agreement included a South Dakota choice-of-law provision (*see* D.E. No. 1-2 ¶ 13), and the other class members were likely subject to same agreement (*see* D.E. No. 83-2, Kim Decl. ¶ 37; D.E. No. 83-4, Carson Tr. 180:15–21). But it is unclear that South Dakota had a substantial relationship to every transaction, or that New Jersey did not have a materially greater interest in claims against particular class members. In other words, even assuming that all of the class members were subject to a South Dakota choice-of-law clause, they still could be subject to a New Jersey statute of limitations depending on the nature of their relationship to each state and the particular language of their agreements. And even assuming that all of the class members are subject to a New Jersey statute of limitations or a South Dakota statute of limitations, they still could be subject to different laws. Under New Jersey law, a four-year statute of limitations governs claims involving the sale of goods, *see* N.J.S.A. § 12A:2–725, and a six-year statute of limitations governs contract claims, *see* N.J.S.A. § 2A:14–1. However, without more evidence, it is unclear that either the four-year or the six-year statute of limitations applies across the class.[7] And the same indeterminacy exists under South Dakota law, in the event that it applies. *Compare* S.D.C.L § 57A-2-725(1), *with* S.D.C.L § 15-2-13(1).

Therefore, individualized inquiry is necessary to determine the applicable law for each potential class member, including the applicable statute of limitations. *See Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 683-84 (M.D. Fla. 2015) (declining to certify a similar proposed class on predominance grounds because determining whether the Delaware limitations period had run for each class member would require the "extensive factual inquiry that courts

---

[7] In a 2016 decision, the Appellate Division held that the four-year statute of limitation governs when "a store-issued credit card . . . is restricted to making purchases from the issuing retailer." *Midland Funding LLC v. Thiel*, 144 A.3d 72, 75 (N.J. Super. Ct. App. Div. 2016). While use of the Target card was likely confined to Target purchases (*see* D.E. No. 1-2 ¶ 1; D.E. No. 83-2, Kim Decl. ¶ 37; D.E. No. 83-4, Carson Tr. 180:15–21), there is no indication that the holding of the Appellate Division should be applied retroactively to claims that arose before that decision. As such, certain class members still could be subject to the six-year statute of limitations.

11

have held to be too administratively burdensome to warrant class certification" and collecting cases); *Clavell v. Midland Funding LLC*, No. 10-3593, 2011 U.S. Dist. LEXIS 65721, at *11 (E.D. Pa. June 21, 2011) ("[W]hether the debt was time-barred is something that we would have to determine for each potential class member. 'If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification.'" (quoting *Ramirez v. Palisades Collection, LLC*, 250 F.R.D. 366, 369 (N.D. Ill. 2008)); *Parkis v. Arrow Financial Services, LLS*, No. 07-0410, 2008 WL 94798, at *4 (N.D. Ill. Jan. 8, 2008) (finding that in "[i]n order to resolve" the question of whether the relevant statutes of limitations had expired, the court "would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit.  Because the payment timing and history will be different for each putative class member, his would involve an individualized inquiry for each potential member.  Thus, the commonality requirement is not met.").

Individualized inquiry is also necessary to determine the possibility of tolling.  Both "claims and defenses" are relevant to predominance, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (citations omitted), and tolling would effectively function as a defense to the claim that the debts were time-barred.  For example, New Jersey recognizes the doctrine of equitable tolling, which suspends the statute of limitations where the relevant period expires as a result of an "adversary's misconduct." *Bustamante v. Borough of Paramus*, 994 A.2d 573, 588 (N.J. Super. Ct. App. Div. 2010) (citations omitted).  Similarly, statutory tolling may be available in New Jersey if an adversary is a non-resident when the cause of action accrues, *see, e.g.*, N.J.S.A. § 2A:14–22, and an extension of time to file a lawsuit following a stay of bankruptcy proceedings may be available as well, *see Nativo v. Grand Union*

*Co.*, 717 A.2d 429, 431 (N.J. Super. Ct. App. Div. 1998) (interpreting 11 U.S.C. § 108(c)). Because the circumstances that give rise to tolling and extensions are fact-specific, variation among class members is possible. Here, however, there is no class-wide method to evaluate the possibility of tolling.[8]

Ms. Filgueiras's arguments to the contrary are unavailing. Ms. Filgueiras contends that Midland was aware that all of the putative class members' debts were time-barred because it used the letter code "OS" and the acronym "OOS," which purportedly referenced debts "outside [the] statute" of limitations. (Reply at 6–8, 10–11). However, Midland maintains that "OS" referenced "outsourced" debts (Sur-Reply), and it has offered a declaration to attest to this fact (D.E. No. 98, McClure Decl. ¶ 5). Furthermore, the evidence cited by Ms. Filgueiras merely shows that one employee suspected that "OS" was "used in internal legal," not that the letter code referred to time-barred debts. (D.E. No. 93-2, Carson Tr. 175:1–6). Otherwise, the evidence shows that Midland has collected on time-barred debts (D.E. No. 93-4, Canez Tr. 105:23–25), that "OOS" referred to debts "out of statute from firm" (D.E. No. 93-2, Carson Tr. 120:8–25), and that Midland used a software to calculate statutes of limitations (D.E. No. 90-1, Canez Tr. 67:4–68:25). These facts do not illustrate that debts were time-barred across the class, only that Midland may have believed that certain debts were outside the statute of limitations. Such belief is insufficient to establish

---

[8] The possibility of tolling may be speculative, but Ms. Filgueiras bears the burden to prove predominance by a preponderance of the evidence, not Midland. Courts may be "unwilling to allow such 'speculation and surmise to tip the decisional scales in a class certification ruling,'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)), as "a defendant should not be able to point to evidence that possibly could be admitted for the purpose of defeating certification where a plaintiff proposes a reasonable theory of a claim that overwhelmingly presents common questions," *Demmick v. Cellco P'ship*, No. 06-2163, 2010 WL 3636216, at *12 (D.N.J. Sept. 8, 2010). However, the decisional scales are already weighted against predominance and individual questions are already overwhelmingly present.

liability on a class-wide basis.[9]

    **ii.    Standing**

The statute of limitations aside, individual issues also predominate with respect to standing.[10] The first element of standing—injury in fact—is the "'foremost' of standing's three elements." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020) (citing *Spokeo*, 578 U.S. at 338). To allege an injury in fact, "a plaintiff must claim the invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 272 (3d. Cir. 2016) (cleaned up). A harm is particularized if it affects the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. A plaintiff may not allege a "bare" statutory violation, "divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "Only those plaintiffs who

---

[9]     For this reason, the Court is unpersuaded by the nonbinding out-of-circuit case cited by Ms. Filgueiras. *See Holzman v. Malcolm S. Gerald & Associates, Inc.*, 334 F.R.D. 326, 333 (S.D. Fla. 2020) (finding predominance where "the record evidence indicates that the defendants knew, or, at a minimum, believed, that the debts were time-barred when the dunning letters were sent"). In any event, that case is distinguishable because "Defendants [did] not explicitly contest that they believed that the debt was, and were treating it as, time-barred." *Id.* In this case, Midland indicates that it believed Ms. Filgueiras's debt was enforceable before it revised its statute of limitations policy. (Opp. at 8).

[10]     Midland points to the Supreme Court decision in *TransUnion* as supplemental authority for the proposition that "every class member must have Article III standing in order to recover individual damages." (D.E. No. 105 at 1; *see also* D.E. No. 117 at 1). The Supreme Court in *TransUnion* held that, to suffer an injury for purposes of standing, a plaintiff must demonstrate harm over and above an alleged statutory prohibition. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–30 (2021). However, the Supreme Court in *TransUnion* did not "address the distinct question [of] whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 2208 n.4. Instead, the Third Circuit addressed this distinct question in *Neale* and held that "unnamed, putative class members need not establish Article III standing." *Neale*, 794 F.3d at 362. In other words, "it is not necessary for each member to prove his or her standing for the class action to be justiciable." *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155 (3d Cir. 2023) (citing *TransUnion*, 141 S. Ct. at 2208 n.4). Rather, "the potential inclusion of some members without standing in a class can result in 'legitimate Rule 23 challenges.'" *Id.* (quoting *Neale*, 794 F.3d at 367–68). As such, the Court addresses individualized issues that predominate over standing via Rule 23, not Article III.

have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 141 S. Ct. at 2205 (emphasis in original). "If a statutory harm is concrete, no 'additional harm beyond the one Congress has identified' is required." *Morales v. Healthcare Revenue Recovery Grp., LLC*, 859 F. App'x 625, 626–27 (3d Cir. 2021) (quoting *Spokeo*, 578 U.S. at 342); *see also, e.g.*, *Browne v. Nat'l Collegiate Student Loan Tr.*, No. 21-1871, 2021 WL 6062306, at *3 (D.N.J. Dec. 22, 2021) (dismissing complaint for lack of standing where plaintiff alleged only non-licensure because such bare procedural violation does not establish concrete harm).

"'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Spokeo*, 578 U.S. at 340. "Although tangible injuries are perhaps easier to recognize," the Supreme Court has stated that "intangible injuries can nevertheless be concrete," such as, for example, harm resulting from violations of the right to free speech or free exercise. *Id.*; *see also id.* at 342 (noting that the risk of reputational harm associated with libel and slander may be concrete); *Morales*, 859 F. App'x at 626 ("Intangible harms like privacy abuses can be concrete."). Under governing Supreme Court precedent, "courts must engage in a two-part inquiry when assessing statutory injuries: 'first, whether the alleged injury bears a close relationship to a traditionally recognized harm, and second, whether a plaintiff has pled more than a mere injury-in-law.'" *Ortner v. Equifax Info. Servs., Inc.*, No. 21-2219, 2022 WL 3566623, at *3 (D.N.J. Aug. 18, 2022) (quoting *Rohl v. Pro. Fin. Co.*, No. 21-17507, 2022 WL 1748244, at *3 (D.N.J. May 31, 2022)). A substantive "informational injury" can also be considered a concrete intangible harm. *See Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023). Specifically, "an informational injury, where a plaintiff alleges that she failed to receive information to which she is legally entitled, is sufficiently concrete to confer standing" where the plaintiff alleges "(1) the omission of information to which

15

she claims entitlement, (2) adverse effects that flow from the omission, and (3) the requisite nexus to the concrete interest Congress intended to protect when it created a legal entitlement to the information at issue." *Id.*

"No doubt, predominance concerns can arise when unnamed class members must submit individualized evidence to satisfy standing." *Huber*, 84 F.4th at 156; *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 368 (3d Cir. 2015) (noting that "a properly formulated Rule 23 class should not raise standing issues). The Third Circuit has held that a named representative "should submit evidence enabling the District Court to estimate how many class members (or what proportion of them) have standing," and that the district court "should evaluate the feasibility of receiving individualized evidence on class members' standing." *Huber*, 84 F.4th at 157 (citations omitted).

Here, it is not clear from the proposed class that all members have standing, as the class definition says nothing about adverse effects stemming from the collection letters in question. And Ms. Filgueiras has not submitted any evidence to establish that standing can be evaluated on a class-wide basis—such as whether class members relied upon the allegedly incorrect letters or suffered adverse downstream effects from the letters—so the Court cannot determine "if many class members appear likely to satisfy standing or if there is a plausible straightforward method to sort them out at the back end of the case." *Id.* at 157–58 (citations omitted).[11] Therefore,

---

[11] For her part, Ms. Filgueiras points to the Third Circuit decision in *Deutsch v. D&A Services* for supplemental authority regarding standing. (D.E. No. 116). However, as Midland correctly notes, that Third Circuit decision is nonbinding, and the facts therein are distinguishable. (*See* D.E. No. 117). In that case, an injury could be traced to "the omission of information" regarding rights afforded by the FDCPA—specifically, 15 U.S.C. § 1692(g)(a)—as well as "adverse effects that flow[ed] from the omission"—specifically, a frustration in the ability to respond and a deprivation of the right to the benefits provided by the FDCPA. *Deutsch v. D&A Servs. LLC*, No. 22-1042, 2023 WL 2987568, at *3 (3d Cir. Apr. 18, 2023) (citations omitted). Indeed, *Deutsch* "emphasized that for an asserted informational injury to confer standing, the omission *must* lead to 'adverse effects' or 'downstream consequences.'" *Pazymino v. Portfolio Recovery Assocs., LLC*, No. 19-2259, 2023 WL 7126446, at *4 (D.N.J. Oct. 30, 2023) (emphasis added).

individualized inquiry is necessary to determine standing.

Accordingly, the predominance requirement is not satisfied. Because the class cannot be certified absent predominance, the Court need not consider the remaining requirements.

## V. CONCLUSION

For the reasons stated above, the motion for class certification is **DENIED.** An appropriate Order accompanies this Opinion.

Dated: April 18, 2024                                                                 *s/ Esther Salas*
                                                                                              **Esther Salas, U.S.D.J.**